OPINION OF THE COURT
Jasen, J.
We are asked on this appeal to decide whether the alleged oral franchise agreement between the parties is barred by the Statute of Frauds.
In 1955, defendants’ predecessor, Minck Beverages, the prime distributor of “Yoo-Hoo” chocolate beverage, entered into a verbal agreement with plaintiff’s predecessors, Joseph Boening and his sons. Pursuant thereto, the Boenings were granted the subdistribution rights of “Yoo-Hoo” beverage in Nassau County and a portion of Suffolk County as well. They were required to cease distribution of a competitor’s chocolate drink and, in return, their subdistributorship was to be exclusive and would continue “for as long as they satisfactorily distributed the product, exerted their best efforts and acted in good faith.”
In 1963, defendant American Beverage Corp. (American) acquired the prime “Yoo-Hoo” beverage franchise from Minck and continued the exclusive subdistributorship agreement with plaintiff’s predecessors until Joseph Boening’s death in 1965, after which his sons continued in business under the name of D & N Boening, Inc., the plaintiff in this action. At that time, plaintiff requested that American reduce the exclusive franchise arrangement to writing, which it refused. American did agree verbally, however, to continue the prior arrangement on the condition that plaintiff’s performance remain satisfactory.
*453 In 1982, defendant Kirsch Beverages, Inc. (Kirsch), purchased American, assuming the latter’s obligations to plaintiff. Thereafter, in that same year, Kirsch informed plaintiff that it was terminating the subdistributorship agreement and would henceforth distribute “Yoo-Hoo” itself. Plaintiff then instituted this action against both American and Kirsch seeking damages for breach of contract or, in the alternative, for specific performance, asserting that “defendants unilaterally terminated the exclusive franchise agreement, without cause thereby breaching the agreement between the parties.” (Emphasis added.)
Defendants made separate motions to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 5) on the ground that the agreement was barred under the Statute of Frauds in that section 5-701 (subd a, par 1) of the General Obligations Law requires all agreements to be in writing which cannot be performed within one year from the date of its making. Special Term denied the motions, holding that the oral agreement by its terms was terminable by defendants at any time and, hence, did not necessarily extend beyond one year and was not within the ambit of the Statute. The Appellate Division unanimously reversed, holding instead that the agreement could not actually be performed within one year but could only be terminated by a breach. Consequently, that court found the agreement to be governed by the Statute of Frauds and void because unwritten. We agree and now affirm.
The ancient Statute of Frauds is derived from the original English “Act for Prevention of Frauds and Perjuries” enacted in 1677, which provided in part that “no action shall be brought * * * upon any agreement that is not to be performed within the space of one year from the making thereof * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith” (29 Charles II, C.3, 8 Stat at Large 405; see 6 Holdsworth, History of English Law [1924], pp 379-397). The entire Statute was intended to prevent fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury and, with regard specifically to the requirement for a signed writing for a *454 contract not to be performed within one year, “the design of the statute was, not to trust to the memory of witnesses for a longer time than one year”. (Smith v Westfall, 1 Lord Raymond 316, 317 [1697]; see Calamari and Perillo, Contracts [2d ed], § 19-1; Fuller and Eisenberg, Basic Contract Law [4th ed], at p B-2.)
Unfortunately, the Statute does not in many cases provide an effective means of serving that purpose. There is no necessary relationship between the time of the making of a contract, the time within which its performance is required, and the time when it might come to court to be proven. Accordingly, the courts have generally been reluctant to give too broad an interpretation to this provision of the Statute and instead have limited it to those contracts only which by their very terms have absolutely no possibility in fact and law of full performance within one year. (2 Corbin, Contracts [1950], § 444; 3 Williston, Contracts [3d ed], § 495.)
In a leading case on this provision of the Statute of Frauds, the United States Supreme Court in 1896 reviewed the case law of both Great Britain and the several States throughout this country and concluded, with regard to the oral agreement before it, that “[t]he parties may well have expected that the contract would continue in force for more than one year; it mav well have been very improbable that it would not do so; and it did in fact continue in force for a much longer time. But they made no stipulation which in terms, or by reasonable inference, required that result. The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable inter pretation of its terms, required that it should not be performed within the year.” (Warner v Texas & Pacific Ry., 164 US 418, 434.) Likewise, this court almost 40 years previous gave a similar construction of this State’s Statute of F'rauds. At that time, we explained that “[i]t is not the meaning of the statute that the contract must be performed within a year. If it can be so performed consistently with the language in which the parties have expressed themselves, in other words, if the obligation of the contract is not, by its very terms, or necessary construction, to endure for a longer *455 period than one year, it is a valid agreement, although it may be capable of an indefinite continuance.” (Trustees of First Baptist Church v Brooklyn Fire Ins. Co., 19 NY 305, 307; see, also, Calamari and Perillo, Contracts [2d ed], § 19-18; Restatement, Contracts 2d, § 130, Comment a.)
This narrow interpretation was unaltered by subsequent legislative reenactments of the Statute of Frauds and by more recent decisions of this court. As presently found in section 5-701 of the General Obligations Law, the statute today provides in pertinent part:
“a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
“1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime”.
The General Obligations Law thus preserves unchanged the critical language which was contained in the earlier statutes (see, e.g., 2 Rev Stats, part II, ch VII, tit II, § 2) and construed in the earliest judicial decisions of this State (see, e.g., Plimpton v Curtiss, 15 Wend 336; Moore v Fox, 10 John 244). Moreover, consistent with that narrow interpretation, this court has continued to analyze oral agreements to determine if, according to the parties’ terms, there might be any possible means of performance within one year. Wherever an agreement has been found to be susceptible of fulfillment within that time, in whatever manner and however impractical, this court has held the one-year provision of the Statute to be inapplicable, a writing unnecessary, and the agreement not barred. So, for example, in the following situations, the oral agreements which were challenged under the Statute of Frauds were all upheld as fully performable within one year: where either party had the option to terminate the agreement on seven months’ notice (Blake v Voigt, 134 NY 69); where the agreement merely set the terms of anticipated prospective purchases but did not bind either party to any particular transaction (Nat Nal Serv. Stas. v Wolf, 304 NY 332); where defendant had the option to discontinue at any time *456 the activities upon which the agreement was conditioned (North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171); where defendant had the option of selling at any time the property on lease to plaintiff for four years (Coinmach Inds. Corp. v Domnitch, 37 NY2d 889); where no provision in the agreement directly or indirectly regulated the time for performance despite the extreme unlikelihood of its completion within one year (Freedman v Chemical Constr. Co., 43 NY2d 260, 265); where employment was terminable for any just and sufficient cause wherever dismissal was deemed necessary for the welfare of the company (Weiner v McGraw-Hill, Inc., 57 NY2d 458, 462)*
On the other hand, while the foregoing oral agreements and similar ones which are performable within one year are saved from the writing requirement of the Statute of Frauds, clearly there are others which simply are impossible of completion within that time by their own terms and are, therefore, void if unwritten. (See, e.g., Polykoff Adv. v Houbigant, Inc., 43 NY2d 921.) Prominent among these latter agreements falling within the Statute are those which are terminable within one year only upon a breach by one of the parties. A breach can in no way be equated with an option to discontinue or cancel, the exercise of which would constitute an alternative performance of the agreement. (See Coinmach Inds. Corp. v Domnitch, supra; North Shore Bottling Co. v Schmidt & Sons, supra.) Where one or both parties have such an explicit option to terminate their agreement within one year, that agreement is, by its own terms, capable of completion within that period and is not governed by the Statute. But, of course, there is no such analogous option to breach. Rather, a breach by definition can never constitute a mode of fully performing an agreement. Performance, if it means anything at all, is “carrying out the contract by doing what it requires or permits” (Blake v Voigt, supra, at p 72), and a breach is the unexcused failure to do so.
As this court early explained, “termination is not performance, but rather the destruction of the contract * * * *457 where there is no provision authorizing either of the parties to terminate as a matter of right.” (Blake v Voigt, supra, at p 72.) And, more recently, in deciding that the contract then under review fell within the Statute because not truly performable within one year, this court held that “[t]he contract was not, then, one which might be performed within a year, but rather one which could only be terminated within that period by a breach of one or the other party to it [emphasis in original]. The possibility of such wrongful termination is not, of course, the same as the possibility of performance within the statutory period.” (Zupan v Blumberg, 2 NY2d 547, 552 [emphasis added]; see, also, Polykoff Adv. v Houbigant, Inc., supra, at p 922, where the court distinguished the contract in North Shore Bottling Co. v Schmidt & Sons, supra, as being outside the Statute because “susceptible of termination by the defendant within a year without breach of the contract” [emphasis added].) Indeed, the commentators have long agreed that the mere possibility of a breach within the first year of an agreement does not constitute the possibility of some alternative performance which would take the agreement out of the Statute. (2 Corbin, Contracts [1950], § 449, p 564; 3 Williston, Contracts [3d ed], § 498, pp 593-594.) Clearly, termination of an agreement as a result of its breach is not performance thereof within the meaning of the Statute of Frauds, and an oral agreement which by its own terms must continue for more than a year unless terminated by its breach is void.
Here, as the Appellate Division correctly held, the oral agreement between the parties called for performance of an indefinite duration and could only be terminated within one year by its breach during that period. As such, the agreement fell within the Statute of Frauds and was void.
The agreement, as alleged in the complaint, specifically provided that the parties’ relationship was to continue “for as long as [plaintiff and its predecessors] satisfactorily distributed the product, exerted their best efforts and acted in good faith.” There was no provision under which “either party might rightfully terminate it within the year [of its making].” (Blake v Voigt, 134 NY 69, 72, supra.) This was not an agreement where, at any time, one or both parties *458 could discontinue their activities (compare North Shore Bottling Co. v Schmidt & Sons, supra) or reject any or all particular transactions (compare Nat Nal Serv. Stas. v Wolf, supra), or sell the properties essential to the contractual relationship thereby rendering performance impossible (compare Coinmach Inds. Corp. v Domnitch, supra), or determine for any just or sufficient reason that termination was necessary for the good of the business (compare Weiner v McGraw-Hill, Inc., 57 NY2d 459, supra). Rather, the alleged agreement in the present case was “one which could only be terminated within [the first year] by a breach of one or the other party to it.” (Zupan v Blumberg, supra, at p 552.)
According to its terms, the agreement required defendants to continue plaintiff’s subdistributorship indefinitely. It provided for no expiration and there was no contemplation of any completion or final discharge. The sole limitation on the agreement’s duration was its explicit requirement — especially crucial to an exclusive agency — that plaintiff conduct its subdistributorship satisfactorily, exerting its best efforts and acting in good faith. Only upon plaintiff’s failure to do so within the first year could the agreement have been terminated during that period.
Such a failure would not have constituted a permitted manner of performance or exercise of an option, but rather, a breach of the agreement. And other than such a breach, there was no provision under the terms of the agreement for it to come to an end. Neither party had an option to cancel, and there was no specified time or event which automatically would cause the agreement to terminate. Instead, under a reasonable interpretation of its own terms, the agreement would extend beyond the first year and, indeed, would continue in perpetuity unless plaintiff failed to perform its part of the bargain.
Being terminable only by plaintiff’s breach, the agreement alleged in the complaint was not one which by its terms could be performed within one year. As such, it came within the ambit of the Statute of Frauds and is void for being unwritten.
We have considered plaintiff’s other arguments and find them to be without merit.
*459 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur.
Order affirmed, with costs.

 It should be noted that the reference in Weiner v McGraw-Hill, Inc. (57 NY2d 458, 463) to an agreement terminable “only for just cause” falling outside the Statute of Frauds is not to be construed as including an agreement where “just cause” can only be the other party’s breach. Such an agreement would fall within the Statute. (See infra.)