**KORET, INC., Plaintiff,**

v.

**RJR NABISCO, INC., R.J. Reynolds Tobacco Company and Yves Saint Laurent, S.A., Defendants.**

**No. 86 Civ. 9451 (KTD).**

United States District Court, S.D. New York.

Oct. 14, 1988.

Spengler Carlson Gubar Brodsky & Frischling, New York City (William J. McSherry, Jr., of counsel), for plaintiff.

Cooper, Dunham, Griffin & Moran, New York City (Gerald W. Griffin, Norman H. Zivin, Donna A. Tobin, of counsel), for RJR Nabisco, Inc. and R.J. Nabisco Tobacco Co.

James A. Goold, Asst. Gen. Counsel, Winston–Salem, N.C., for R.J. Reynolds Tobacco Co.

Coblence & Warner, New York City (Marjorie M. Smith, of counsel), for Yves Saint Laurent, S.A.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendants RJR Nabisco, Inc., R.J. Reynolds Tobacco Company (jointly referred to as "RJR"), and Yves Saint Laurent, S.A. ("YSL") jointly move for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff Koret, Inc. ("Koret") opposes the motion. For the following reasons the motion for summary judgment is granted and the case is dismissed.

### FACTS

Koret is a New York corporation in the business of conceiving, designing, manufacturing, and distributing consumer products. The parties to this action do not dispute that Koret approached RJR in 1975, suggested that there was a market for a cigarette brand marketed in conjunction with a famous European design house, and offered its expertise and services in developing a marketing plan and soliciting a license from such a design house. RJR and Koret met several times to discuss the idea and Koret, with RJR's permission, began to solicit a license. RJR and Koret also exchanged letters discussing the plans and developments; however, a formal contract was never memorialized by a writing. The parties now dispute Koret's precise role in developing the product.

The first design house approached by Koret did not grant the license. As a result, Koret, again with RJR's permission and participation, researched alternatives and began to solicit a license from the design house of YSL in 1976. Eric Alba–Teran d'Antin, an alleged agent of Koret, approached YSL on RJR's behalf. The negotiations with YSL were unsuccessful at that time.

In 1982 YSL approached RJR to discuss a license for the use of the YSL name in marketing cigarettes. An RJR internal memo from that time acknowledges both Koret's involvement in "exploration" and d'Antin's role as a negotiator during the prior license attempt. The memo anticipates possible compensation claims by d'Antin only. Koret and d'Antin are apparently considered separate entities. Affidavit of William J. McSherry, Jr., Esq., Attaching Exhibits in Opposition to Defendants' Motion for Summary Judgment ("McSherry Affid."), Exh. 13. An agreement was reached and RJR began marketing a YSL cigarette brand, RITZ, in 1984. Koret wrote to RJR and YSL in 1985 requesting compensation. When that was denied, Koret initiated this lawsuit.

### DISCUSSION

Koret's complaint alleges six causes of action on the grounds that: (1) RJR breached an express agreement to compensate Koret, (2) RJR misappropriated Koret's novel ideas, (3) RJR breached an implied agreement to compensate Koret for the novel ideas, (4) RJR is unjustly enriched by its use of Koret's novel ideas, (5) RJR breached a relationship of special trust relied upon by Koret, and (6) YSL has knowingly and maliciously interfered with Koret's contract rights with RJR. RJR and YSL argue in support of this summary judgment motion that the idea of a designer cigarette is not novel and that Koret's contract claims are barred by the New York Statute of Frauds, N.Y.Gen. Oblig.Law § 5–701 (McKinney 1978 & Supp.1988).

██ In support of its claim that its idea was novel and is therefore a protectible property right, Koret asserts that RJR and YSL had not thought of the idea prior to Koret's proposal and that RJR's current

advertising campaign touts the cigarette as unique. Koret's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Koret's Mem.") at 5. However, neither an individual's lack of knowledge nor an advertising campaign are sufficient evidence that an idea was not in the public domain. A "novel" idea is one that has not been suggested to or known by the public at a prior time. *Murray v. National Broadcasting Co., Inc.*, 844 F.2d 988, 991, 993 (2d Cir.1988); *Ferber v. Sterndent Corp.*, 51 N.Y.2d 782, 783, 412 N.E.2d 1311, 1312, 433 N.Y.S.2d 85, 86 (1980). If "an idea consists in essence of nothing more than a variation on a basic theme ... novelty cannot be found to exist." *Murray*, 844 F.2d at 993.

Koret's opposition to this motion acknowledges that "[d]uring the early 1970's, European design houses began granting extensive licenses to market goods under their names in connection with a multitude of products." Koret's Mem. at 19–20. A 1975 letter from Koret to RJR also describes the variety of existing products marketed under a design house license and the existing cigarette brands marketed for style-conscious consumers. McSherry Affid., Exh. 38. In addition, Koret does not dispute the fact that Christian Dior–New York, Inc., obtained a United States trademark for cigarettes as early as 1955. Koret's Mem. at 29. Although the registration of a trademark is not dispositive of the owner's right to bar its use by others, its filing is constructive notice to the public of the idea protected by the trademark. Lanham Trade–Mark Act, 15 U.S.C. § 1072 (1982). *See also Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44 (2d Cir. 1978). The undisputed affidavits and exhibits submitted by the parties on this motion demonstrate the fact that the idea of marketing goods other than high fashion clothing, and specifically the idea of marketing a cigarette, in conjunction with a famous design house is an idea that was in the public domain prior to the time Koret approached RJR.

Koret points to its mass marketing plan and its research identifying an appropriate target market and the appropriate licensor and licensee as further evidence that it offered RJR a specific and novel idea. These considerations, however, only support the conclusion that what Koret offered RJR was merely a "variation on a basic theme." *Murray*, 844 F.2d at 993. Koret's idea is therefore not novel as a matter of law and is not, standing alone, entitled to legal protection.

■ This motion cannot be resolved by a finding of lack of novelty alone. An idea that is not novel may nonetheless be sufficient consideration to support an agreement to compensate if such an agreement is found to exist. Thus, because the parties do not dispute the fact that their relationship involved ongoing negotiations and efforts on RJR's behalf by Koret rather than a mere offer of an idea by Koret, sufficient evidence of an enforceable agreement between Koret and RJR would preclude summary judgment on Koret's contract claims at this time. *Cf. Downey v. General Foods Corp.*, 31 N.Y.2d 56, 286 N.E.2d 257, 334 N.Y.S.2d 874 (1972).

■ A writing that evidences a promise by RJR is essential to Koret's case. The New York Court of Appeals has held that a writing is required under the Statute of Frauds when, as here, a party agrees to act as an intermediary and to provide " 'know-how' or 'know-who', in bringing about between principals an enterprise of some complexity." *Freedman v. Chemical Constr. Corp.*, 43 N.Y.2d 260, 267, 372 N.E.2d 12, 16, 401 N.Y.S.2d 176, 181 (1977). Koret itself has described its idea as involving a "co-venture between an American tobacco company and a European design house." Koret's Mem. at 31. Stripped of the claim of novelty, the alleged agreement between Koret and RJR is such a broker agreement and thus unenforceable unless evidenced by a writing. *See Rogoff v. San Juan Racing Ass'n. Inc.*, 77 A.D.2d 831, 431 N.Y.S.2d 16 (1st Dep't 1980).

■ Even if the alleged agreement between Koret and RJR is not a broker agreement, Koret must come forward with a writing that evidences the agreement to withstand summary judgment. An oral

contract that is "terminable within one year only upon a breach by one of the parties" is not enforceable under New York law. *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 457, 472 N.E.2d 992, 995, 483 N.Y.S.2d 164, 167 (1984). Such a contract includes, as the contract alleged by Koret, one under which neither party is authorized to terminate the contract as of right within one year. *Id.* RJR arguably has the right to terminate its license with the design house and its sales of the cigarettes within one year. However, such failure to use Koret's idea would not terminate the alleged contract. *See Shirley Polykoff Advertising, Inc. v. Houbigant, Inc.*, 43 N.Y.2d 921, 374 N.E.2d 625, 403 N.Y.S.2d 732 (1978).

■ In support of its claim that there are writings evidencing RJR's agreement to compensate it for its contributions toward marketing a designer cigarette, Koret points to RJR's written presentation to Koret regarding the amount of royalties RJR would be willing to pay to a licensing design house. Thomas Tillander's Affidavit in Opposition to Defendant's Motion for Summary Judgment ("Tillander Affid.") at ¶ 9 and Exh. 2. This exhibit, however, appears to be a proposal for payments to the licensing design house only; payment to Koret is not mentioned. Exhibit 11 apparently revises the offer of compensation to YSL, but it too fails to mention compensation of Koret. McSherry Affid., Exh. 11.

The only exhibits that display an RJR writing regarding compensation to a party other than the licensing design house concern d'Antin. Each of these exhibits mention possible compensation to d'Antin as an individual rather than as Koret's agent and only for his role as a negotiator or broker between RJR and YSL. Tillander Affid., Exh. 6–7; McSherry Affid., Exh 13, 20. Because these documents contain no evidence of RJR's intent to compensate Koret they are insufficient to raise a material issue of fact relevant to this motion.

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Koret has submitted no evidence of a "note or memorandum ... in writing, and subscribed by [RJR]" that promises to compensate Koret for its role in this matter. N.Y.Gen.Oblig. Law § 5–701(a). I do not doubt that Koret did a substantial amount of work both in developing the marketing plan it offered to RJR and in attempting to obtain a design house's license. However, absent a written contract, Koret cannot compel RJR to compensate Koret for its work. Having failed to adequately protect its own interests, Koret, a sophisticated and experienced business, cannot now ask this court to provide that protection.

In sum, summary judgment is granted in favor of RJR and YSL on Koret's second, third, fourth, and fifth causes of action because Koret's idea was not novel as a matter of law, and on the first and sixth causes of action because Koret has failed to provide enough evidence to create a genuine issue of material fact as to the existence of an enforceable agreement with RJR.

SO ORDERED.