ALAN SKOP, INC., Appellee,

v.

BENJAMIN MOORE, INC., Appellant.

No. 1499, Docket 90-7308.

United States Court of Appeals, Second Circuit.

Argued May 14, 1990.

Decided July 13, 1990.

Joshua F. Greenberg (Richard A. De Sevo, Kaye, Scholer, Fierman, Hays & Handler, New York City, John T. Rafferty, Gen. Counsel, Benjamin Moore & Co., Montvale, N.J., of counsel), for appellant.

Howard I. Schneider, Schneider & Tratner, New York City, for appellee.

Before OAKES, Chief Judge, PRATT, Circuit Judge, and LEVAL, District Judge.*

PER CURIAM:

Benjamin Moore, Inc., appeals an order dated March 15, 1990, and entered March 26, 1990, of the United States District Court for the Eastern District of New York, Jack B. Weinstein, Judge, granting a preliminary injunction requiring Benjamin Moore, Inc., to continue supplying its paint products to Alan Skop, Inc., a Brooklyn retail store selling Benjamin Moore paints. We vacate the injunction and remand.

Alan Skop [1] claims he has an oral dealership agreement with Benjamin Moore under which Benjamin Moore would supply its paint products to Skop. As discussed below, Skop has given varying explanations of the remaining terms of this purported agreement, most particularly the duration and conditions.

Skop's father, Nat Skop, had operated a Benjamin Moore dealership out of his Queens store, under an apparently similar arrangement. Nat Skop's dealership was terminated on July 12, 1989, after he had purchased without an invoice an undetermined amount of paint from a delivery driver by paying the driver cash.

Following his termination, however, Nat Skop continued to stock Benjamin Moore products. Benjamin Moore accused Alan Skop of supplying his father in violation of its policy prohibiting an authorized dealer from "transhipping" Benjamin Moore products to unauthorized dealers. Nat Skop maintained that his Benjamin Moore supply consisted of inventory left over after his termination, and of paint he later bought from another dealer whom he refused to

* Of the Southern District of New York, sitting by designation.

1. For the remainder of this opinion, we refer to "Alan Skop, Inc.," by the name of its proprietor, Alan Skop. Likewise, we refer to "Nat Skop, Inc." as "Nat Skop."

identify but who he insisted was not his son Alan. Although Alan Skop admitted to storing some of his excess inventory both at his parents' house and his father's store, he said that he did so only because his store was too small to hold his inventory, and added that Benjamin Moore had long been aware of this practice. Benjamin Moore terminated Alan Skop's dealership on December 5, 1989.

Alan Skop filed a complaint in New York State Supreme Court on February 1, 1990, alleging breach of contract and violations of federal and state antitrust laws. He also obtained a temporary restraining order commanding that Benjamin Moore continue to supply him. Benjamin Moore then removed on diversity grounds to the district court, which held a preliminary injunction hearing on March 2, 1990. After the parties failed to agree on a settlement, the district court granted a preliminary injunction ordering Benjamin Moore to continue supplying Alan Skop, provided that Alan Skop and Nat Skop, whom the district court joined as a party, remit monies owed to Benjamin Moore within ten days, and that Nat Skop return all Benjamin Moore inventory and remove his Benjamin Moore sign from his storefront within two days.

Our jurisdiction is founded upon 28 U.S.C. § 1292(a)(1) (1988), which allows appeal from an order granting an injunction. The standard for obtaining a preliminary injunction in this circuit is well established. The moving party must show (1) irreparable harm, and (2) either (a) likelihood of success on the merits or (b) a sufficiently serious question going to the merits along with the balance of hardships tilting decidedly toward the plaintiff. *E.g., Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

Even without considering the question of irreparable harm, we are compelled to find that the district court overstepped its discretion in granting the preliminary injunction. Because Skop's claim appears, at least on the record as it presently stands, so likely to fall victim to the New York statute of frauds, which the parties agree governs, he cannot establish either the likelihood of success on the merits or the sufficiently serious question going to the merits that are essential to maintain the preliminary injunction.

Skop's claim is subject to either of two provisions under the New York statute of frauds. If one were to consider his purported oral agreement with Benjamin Moore as one for a sale of goods, the New York Uniform Commercial Code, which requires that any contract for the sale of goods over $500 be in writing, N.Y. U.C.C. Law § 2–201(1) (McKinney 1964), would prevent Skop from enforcing it.

Arguably, one could conceptualize the purported agreement as a dealership contract, instead of as one for the sale of goods. Nonetheless, even so conceptualized, the merits of Skop's claim still remain too speculative to support the injunction. Under New York law, an agreement which by its terms is not to be performed within one year is *void if not in writing. See* N.Y.Gen.Oblig.Law § 5–701(a)(1) (McKinney 1989). In determining whether a dealership agreement necessarily requires more than one year for performance, we must distinguish between two facially similar dealership agreements. Under one type of agreement, a wholesaler may agree to supply a dealer so long as the wholesaler remains in business. New York law would not consider this agreement subject to the writing requirement, because the agreement conceivably could be performed within one year if the franchiser were to go out of business within the year. *See North Shore Bottling Co. v. C. Schmidt and Sons, Inc.*, 22 N.Y.2d 171, 239 N.E.2d 189, 292 N.Y.S.2d 86 (1968).

On the other hand, if the agreement were to run indefinitely so long as the dealer were to comply with the wholesaler's policies, New York law would require the agreement to be in writing. Although the agreement could be *terminated* within a year by the dealer's breach, it could not be fully *performed* within a year. *See D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 472 N.E.2d 992, 483 N.Y. S.2d 164 (1984) (franchise contract running "for as long as [the franchisees] satisfacto-

rily distributed the product, exerted their best efforts and acted in good faith" must be in writing).

Although Skop claims his purported agreement with Benjamin Moore is in the first category, he has not consistently held this position throughout the litigation. During the hearing before the district court on the order to show cause why the preliminary injunction should not issue, as well as once in his supporting memorandum of law and once in his appellate brief, Skop asserted that Benjamin Moore agreed to supply him so long as Benjamin Moore remained in business. If this were true, the purported agreement could be performed within a year and would not have to be in writing.

However, on at least four other occasions Skop explained the purported agreement in ways that would render it fatal under the New York statute of frauds. In his complaint to the New York State Supreme Court, Skop claimed that Benjamin Moore had agreed to supply him and not to terminate him without just cause. In his affidavit seeking the state court temporary restraining order, Skop claimed that Benjamin Moore had agreed to continue supplying him so long as he maintained a good credit rating. In his affirmation accompanying Skop's affidavit, Skop's counsel depicted the purported agreement in similar terms. In his memorandum of law before the district court in support of the preliminary injunction, Skop claims that the agreement was that Benjamin Moore would supply him so long as he marketed the products honestly and effectively. Under any of these constructions, the purported agreement would fail to comply with the New York statute of frauds, because it could not be fully performed within one year—although it could be terminated through a breach by Skop.

We have held that conflicting stories between parties can establish a sufficiently serious question going to the merits for purposes of justifying a preliminary injunction. *See Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.,* 749 F.2d 124, 126 (2d Cir.1984) (per curiam). Skop, however, cannot get his own story straight. Depending upon where one looks in the record, his purported agreement either violates the statute of frauds or rests outside the statute of frauds. Before reaching the point at which Skop's story would conflict with Benjamin Moore's, one first would have to unravel the inconsistencies in Skop's varying versions of the purported agreement. Because these internal inconsistencies present a substantial barrier to our reaching that point, we do not believe that Skop can establish a sufficiently serious question going to the merits. (Of course, given this, he certainly cannot show a likelihood of success on the merits, either.)

We caution that although today we take a somewhat skeptical view of the merits of Skop's case, nothing in our opinion should be taken as conclusively foreclosing Skop's claim. We only hold that as his case presently stands, Skop is not entitled to preliminary relief. With additional development of his case following remand, Skop may prove able to overcome the statute of frauds barrier and other hurdles to eventual success on the merits. Finally, because the district court's order does not address Skop's antitrust claim, we likewise express no opinion on it.

Preliminary injunction vacated. Cause remanded.