METPATH, INC., Respondent, v RAY BROWN, Defendant, and RICHARD RIBNER et al., Appellants.

First Department, March 31, 1992

**APPEARANCES OF COUNSEL**

*Robert M. Kaplan* of counsel *(Ferber Greilsheimer Chan & Essner,* attorneys), for appellants.

*Kerry Gotlib* for respondent.

### OPINION OF THE COURT

CARRO, J.

The plaintiff, Metpath, Inc., performs diagnostic laboratory tests for individuals, doctors and medical centers, among others. The defendants are individuals and a corporation that sponsored and conducted a medical research study to determine the effectiveness of homeopathic remedies and acupuncture on persons suffering from AIDS, which study required periodic laboratory blood tests to be conducted upon the individuals participating in the study.

The defendants requested Metpath to conduct these tests, in regard to which defendants assigned each participant an alias (using the names of movies stars, politicians and other public figures) to identify the blood samples. Laboratory bills were sent by Metpath to each participant under that alias, addressed care of defendants, and the defendants were to issue checks made out to each participant under his or her alias, to be endorsed over to Metpath by each participant using the assigned alias. This convoluted payment mechanism, allegedly agreed to by the defendants, was intended to ensure confidentiality for the project participants, and to meet the prohibition contained in section 394-e of the General Business Law, which provides as here pertinent:

"1. It shall be unlawful for any purveyor of clinical laboratory services, directly or indirectly * * * to bill or receive payment, reimbursement, compensation or fee from any person other than the recipient of the services, such recipient being the person upon whom the clinical services have been or will be rendered * * *

"3. A violation of the provisions of this section shall constitute a misdemeanor and upon conviction thereof may be punished by imprisonment for not longer than one year or a fine of not more than five hundred dollars or by both such fine and imprisonment."

In its original complaint, plaintiff sought to recover $136,300 for the extensive laboratory tests it performed in connection with the project at the defendants' behest. Defendants, after service of their answer, moved for summary judgment dismissing the complaint on the ground that it was barred by General Business Law § 394-e. Plaintiff cross-moved for leave to serve an amended complaint alleging breach of the oral agreement pursuant to which payment for the laboratory tests was to be accomplished using the procedure, outlined briefly above, which as noted was designed in part to maintain confidentiality for the project participants. The IAS court denied defendants' motion for summary judgment and granted plaintiff's cross motion for leave to serve an amended complaint.

■ The order should be affirmed. General Business Law § 394-e prohibits a purveyor of clinical laboratory services from billing or receiving payment from any person other than the recipient of the services. However, in the context of this particular research project conducted by these defendants, it is apparent that the actual recipients of the services were not the participants whose blood was being monitored, but rather the defendants who contracted to have the tests performed. As concerns contractual relationships and responsibilities, the participants merely donated their blood to the defendants for periodic testing and evaluation, and defendants' obligation to pay for the tests performed by Metpath was the same as if the blood had been drawn from a laboratory animal.

Moreover, even if the participants in the project were to be deemed the "recipients" of the services, the statute is nevertheless inapplicable because the project was by its terms fully funded by the sponsor "at no cost to the participants." The statute is clearly not intended to apply to a situation where

the person or entity ordering the laboratory services has no intention to pass on to the "recipient" the cost of these services, as demonstrated by the "[s]tatement of purpose" of the statute as set forth in Laws of 1970 (ch 971, § 1): "This bill [adding what is now General Business Law § 394-e] provides for direct billing by the providers of laboratory services, clinical laboratories, to the recipient of the services, the patient, in order to reinforce chapter four hundred sixty-six of the laws of nineteen hundred forty-four [amending section 1264 (now section 6509-a) of the Education Law] which prohibits fee-splitting by physicians with clinical laboratories. Although the law of nineteen hundred forty-four prohibits fee-splitting by physicians with clinical laboratories, there is no provision preventing the circumvention of this law by clinical laboratories by offering physicians, for example, unlimited laboratory services at a flat rate which is payable directly to the laboratory by the physician who in turn is free to charge and bill the patient any amount for these tests. Direct billing will eliminate this practice and reinforce the intent of the law of nineteen hundred forty-four, protection of the consumer public."

A simple example will illustrate the point. Suppose a physician is treating, *pro bono,* an indigent patient who cannot afford to pay for the physician's services or necessary tests. Can it be seriously contended that if the physician, acting out of charity, pays the laboratory for the tests, without passing on any of the cost to the patient, the person in the laboratory who receives such payment faces a year in jail plus a $500 fine? That could not possibly have been the legislative intent, and the legal relations of the parties herein are no different. We would accordingly construe the statute, consistent with its unambiguously stated legislative purpose, to have no application where it is known that the physician, or any person or entity ordering laboratory tests, will not pass on to the recipient any part of the cost of the laboratory tests. That circumstance is present herein, and it matters not that the parties, in seeking to circumvent the perceived prohibition in General Business Law § 394-e, devised an elaborate payment scheme involving billings to aliases, checks that were to be made out to aliases, and endorsements over to Metpath.

Since it is alleged that Metpath and the defendants knew from the outset that the defendants intended to entirely absorb the costs of the laboratory tests, defendants assumed the obligation for payment. Consequently, the contractual

cause of action in the amended complaint is not barred by General Obligations Law § 5-701 (a) (2), rendering unenforceable an oral agreement that is a "special promise to answer for the debt * * * of another person". Nor are there terms in the alleged oral agreement providing that it was not to be performed within one year; thus General Obligations Law § 5-701 (a) (1) is inapplicable. *(See, Freedman v Chemical Constr. Corp.,* 43 NY2d 260, 265; *D & N Boening v Kirsch Beverages,* 63 NY2d 449, 454.)

Accordingly, the order of the Supreme Court, New York County (Francis N. Pecora, J.), entered April 3, 1991, which, *inter alia,* denied defendants' motion for summary judgment dismissing the complaint, and granted plaintiff's cross motion for leave to file an amended complaint, should be affirmed, with costs.

SULLIVAN, J. P., KASSAL and SMITH, JJ., concur.

Order of the Supreme Court, New York County, entered April 3, 1991, which, *inter alia,* denied defendants' motion for summary judgment dismissing the complaint, and granted plaintiff's cross motion for leave to file an amended complaint, is affirmed, with costs.