■ LEHRER McGOVERN BOVIS, INC., Appellant, v NEW YORK YANKEES, Respondent. [615 NYS2d 31] —Order, Supreme Court, New York County (Myriam J. Altman, J.), entered November 4, 1993, which granted defendant's motion for summary judgment and dismissed the complaint, unanimously reversed, on the law, with costs, and the complaint is reinstated.

Plaintiff Lehrer McGovern Bovis, Inc. ("LMB"), a construction management firm, alleges that in the fall of 1987, it was retained by defendant limited partnership The New York Yankees (the "Yankees") to perform certain pre-construction management work in connection with the renovation of Yankee Stadium, a facility owned by the City of New York (the "City"). Specifically, plaintiff avers that: it analyzed and reviewed architectural drawings to ensure the feasibility of the project; separated the necessary work so that bids could be solicited from the various construction trades; reviewed and developed specifications for the physical work; created time schedules for the construction, as well as budget and cost estimates; prepared bid packages and evaluated the subsequent bids; and attended meetings with the owner and architect.

Plaintiff claims that after being retained by the Yankees, it drew up a letter agreement dated December 1, 1987 that delineated the work it was to perform and the projected costs. The proposed letter agreement concluded with a request that the Yankees indicate their acceptance by signing and return-

ing the document, which was never done. Notwithstanding the foregoing, LMB maintains that it proceeded to review the drawings and specifications provided by the Yankees' architects, Gilboy, Stauffer, Giombetti, Skibinski, Bellante ("GSGSB"), prepared the bid packages, devised work schedules and attended various meetings with the Yankees, their architects and City personnel. Invoices for the work were sent by plaintiff to the Yankees on a tri-monthly basis. The Yankees did not remit payment nor voice any objections to the invoices.

Toward the end of January 1988, plaintiff submitted a written contract to the Yankees, which deviated from the earlier proffered letter agreement by providing for management services to be performed for the period preceding and following the start of construction. This proposed contract was allegedly personally delivered to Mr. George Steinbrenner, the General Partner of the Yankees, by E. Lawrence Bellante, a partner of GSGSB. At that time, Steinbrenner purportedly confirmed that plaintiff should continue its work and, as a result, plaintiff began to solicit bids for construction projects and continued to send invoices to the Yankees.

Thereafter, at a meeting held on April 6, 1988, Steinbrenner, in unequivocal language, is alleged to have committed the Yankees to the completion of the Stadium's renovation regardless of whether municipal funding would be received. Steinbrenner also allegedly sought to have the January 1988 proposed construction management agreement revised only to the extent of the number of box seats to be erected, but otherwise indicated that the terms of the agreement were acceptable.

By letter dated April 14, 1988, the Yankees directed LMB to refrain from awarding construction contracts, although plaintiff notes that it was not asked to discontinue pre-construction services and that at a meeting held on April 15, 1988, the Yankees requested additional pre-construction work. By letter dated April 19, 1988, however, the Yankees denied that they had a contractual relationship with LMB, disputed LMB's invoices, and made it clear that they did not intend to pay LMB for the work it claimed to have performed at the Yankees' behest. Consequently, LMB, maintaining that it had provided $125,000 in work, labor and services, commenced the underlying lawsuit and interposed two causes of action sounding in breach of contract and quantum meruit. Defendant joined issue and discovery ensued.

In granting defendant's motion for summary judgment dismissing both of plaintiff's causes of action, the IAS Court

improperly adopted the Yankees' rendition of the facts while almost unilaterally rejecting the claims made by LMB. On a motion for summary judgment, the court's function is one of issue finding, not issue determination, and statements contained in opposing affidavits must be deemed true for the purpose of ascertaining whether there are any unresolved, triable issues of fact (see, Kriz v Schum, 75 NY2d 25, 33; Creighton v Milbauer, 191 AD2d 162, 166; Henderson v City of New York, 178 AD2d 129, 130).

There is no dispute that LMB did perform certain pre-construction work on behalf of the Yankees and it is clear that once the actual construction work began, LMB was being contemplated for the position of general contractor. The IAS Court, however, concluded that the pre-construction work was preparatory in nature and "is meaningless absent a construction project," thereby deeming valueless any work or services performed by LMB unless the project went forward. The IAS Court, based on the premise that the pre-construction services were indivisible from the construction itself, then concluded that the alleged oral agreement fell within the Statute of Frauds because it provided for an obligation which could not be completed within one year. This was error.

It is well settled that an oral agreement is voidable if it contains an obligation incapable of performance within one year (see, General Obligations Law § 5-701 [a] [1]; D & N Boening v Kirsch Beverages, 63 NY2d 449; McCooey v Forstmann Leff Assocs., 190 AD2d 624). In an internal "New Project Memorandum" prepared by plaintiff dated December 1, 1987, the two construction phases are clearly divided into two separate time periods: a pre-construction period, which was to run from January 1988 to October 1988, and a construction period, which was to run from October 1988 to April 1989. The memorandum also provided that the pre-construction phase was to be billable. Further, Mr. Bellante of GSGSB testified that Steinbrenner had directed LMB to continue performing pre-construction work and that LMB would also be considered for the additional role of general contractor if construction was to begin, apparently recognizing that two separate phases of the project existed. The foregoing, at the very least, raises issues of fact as to whether the pre-construction services were divisible from the construction itself. If, in fact, the services were divisible, then the memorandum prepared by LMB indicates that the pre-construction phase was, at least by design, to be completed in nine months, taking the alleged agreement outside the Statute of Frauds.

To the extent that the IAS Court held that the facts presented lead to the unequivocal conclusion that no binding agreement was reached between the parties, we disagree. The existence of a contract is not dependent on the subjective intent of the parties, nor on any single act, but on the totality of the circumstances, the situations of the parties and the goals they were attempting to achieve (see, Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 399-400; Conopco, Inc. v Wathne Ltd., 190 AD2d 587; Four Seasons Hotels v Vinnik, 127 AD2d 310, 317). Further, the question of contractual intent, and whether the parties meant to be bound, is largely one to be resolved by the trier of fact (see, Bowne of N. Y. v International 800 Telecom Corp., 178 AD2d 138, 139; Bauman Assocs. v H & M Intl. Transp., 171 AD2d 479, 483).

In the instant action, a review of the facts and circumstances reveals that the Yankees directed and accepted performance from LMB, met with them on numerous occasions and made no effort to object to a series of invoices forwarded by LMB for services rendered. With regard to the goals the parties were attempting to achieve, whether the work being performed by LMB was merely preparatory to and totally dependent on the final project going forward, as the Yankees allege and the IAS Court held, or was a project workup entirely separable from the main enterprise, as LMB alleges, is a factual issue incapable of resolution at this juncture. The IAS Court, however, in adopting defendant's arguments, relied heavily on a statement made by Eugene McGovern, a former partner of LMB and the individual who initially negotiated with the Yankees, that no agreement existed, at the expense of all of the other contrary evidence, which was error.

Likewise, plaintiff's cause of action for quantum meruit should not have been dismissed. In order to state a claim in quantum meruit, the plaintiff must assert: the performance of services in good faith; the acceptance of those services by the entity to which they were rendered; an expectation of compensation therefor; and the reasonable value of the services (see, Bauman Assocs. v H & M Intl. Transp., supra, at 484; Moors v Hall, 143 AD2d 336, 337-338).

In the case at bar, there is no question that services were performed by LMB and that they were accepted by the Yankees. In addition, the fact that LMB sent tri-monthly invoices to the Yankees, at the very least, raises an issue of fact as to whether plaintiff expected compensation for its services (see, Umscheid v Simnacher, 106 AD2d 380, 383). Concur—Murphy, P. J., Carro, Wallach, Asch and Tom, JJ.