■ FINCH, PRUYN & COMPANY, INC., Appellant, v NIAGARA PAPER COMPANY, INC., et al., Respondents. [643 NYS2d 773] —Mikoll, J. P.

Plaintiff, a New York corporation located in the City of Glens Falls, Warren County, manufactured paper products which were purchased and resold by defendant Niagara Paper Company, Ltd. (hereinafter NP/LTD), a Canadian merchant and subsidiary of defendant Niagara Paper Company, Inc. (hereinafter NP/US), located in the City of Buffalo, Erie County. On or about April 1, 1990, plaintiff notified NP/LTD that it would continue selling its products to NP/LTD until May 1, 1990 and that a third party would then become the exclusive distributor for plaintiff in the Province of Ontario and the Atlantic provinces.

On November 20, 1992, plaintiff informed NP/US that it had been unable to collect outstanding invoices in the sum of $70,000 for sales to NP/LTD. NP/US replied that it was not liable to plaintiff because plaintiff improperly terminated their oral agreement as to "our dealership status" in Canada. The parties agree that there is no documentary evidence of a distributorship agreement between plaintiff and NP/LTD.

Plaintiff subsequently commenced the instant action seeking, inter alia, judgment against defendants in the amount of $70,984.84. Defendants asserted counterclaims, alleging, inter alia, that the parties had a distributorship agreement of unlimited duration which plaintiff had breached without good cause or reasonable notice, and demanding, inter alia, judgment in the sum of $250,000. Plaintiff interposed, inter alia, the Statute of Frauds as an affirmative defense.

In an order issued January 28, 1994, Supreme Court denied motions of defendants (a) to dismiss the complaint against

NP/US as an improper party, (b) to dismiss the complaint on the ground that Ontario, Canada, was the proper forum, and (c) to dismiss plaintiff's Statute of Frauds defense. Supreme Court granted defendants permission to amend their counterclaims to include allegations that, alternatively, the distributorship agreement was an "at will" agreement which could be terminated by either party only upon reasonable notice and that plaintiff did not provide defendants with such notice when it terminated the agreement.

Discovery was then conducted which included depositions. Plaintiff objected to defendants' document request No. 2 (i),[1] alleging that the information it requested constituted "trade secrets and/or confidential business information and * * * material which is not necessary to the prosecution or defense". Defendants responded that, given plaintiff's denial that NP/LTD was their exclusive distributor in Ontario, taking depositions without the information requested in document request No. 2 (i) would be counterproductive, and refused to attend the scheduled depositions until the information was produced.

Supreme Court denied in part plaintiff's subsequent motion for a protective order, limiting the information and documents requested to the years 1986 to 1990. The court also denied plaintiff's motion for summary judgment to dismiss defendants' counterclaims, noting that there were factual questions to be resolved and discovery to be completed. Supreme Court also denied plaintiff's motion for summary judgment for the amount of the unpaid invoices, finding that factual issues existed as to "the alleged breach and the damage to defendants". Further, Supreme Court granted defendants' motion for a protective order in order to avoid a second deposition once the material was produced. This appeal by plaintiff ensued.

The order of Supreme Court should be modified to include a direction that the information disclosed pursuant to defendants' discovery request No. 2 (i) be kept confidential and, as so modified, affirmed.

Plaintiff's arguments that Supreme Court erred in denying its motion for summary judgment to dismiss defendants' four

---

1. Defendants' document request No. 2 (i) sought: "Contracts, purchase orders, invoices, bills of lading, freight receipts, and/or any other document (1) identifying the name(s) of each person, corporation, company or other legal entity functioning as a distributor of plaintiff's paper products or as 'an at will paper merchant with respect to plaintiff' in Ontario, Canada from 1986 through 1993, and/or (2) tabulating or otherwise reflecting the amount of paper products purchased from plaintiff by each such person, corporation, company or other legal entity annually during the period from 1986 through 1993."

counterclaims are without merit. There are factual issues to be tried. Plaintiff asserts that defendant's first three counterclaims, viewing the agreement as a distributorship "for an unlimited duration to be terminated only for good cause", are without merit because such agreement could not be performed within one year of its making and would therefore violate the Statute of Frauds. Plaintiff also contends that defendant's fourth counterclaim, treating the distributorship as an "at will" agreement, lacks merit because plaintiff gave reasonable notice to defendants of its termination of the agreement. We reject both of these assertions.

Whether the distributorship agreement is characterized as being "for an unlimited duration to be terminated only for good cause" or as an "at will" agreement, it is not governed by the Statute of Frauds. Termination of an oral contract without excuse within one year of its formation, by itself, will not render the Statute of Frauds inapplicable. However, where the parties explicitly are given the option to terminate the agreement within one year, the Statute of Frauds will not apply (see, D & N Boening v Kirsch Beverages, 63 NY2d 449, 456; McCooey v Forstmann Leff Assocs., 190 AD2d 624). Contracts that can be terminated "at will" by one of the parties are not within the purview of the Statute of Frauds since they could be terminated in less than a year (see, Kalfin v United States Olympic Comm., 209 AD2d 279, 280; De Rubbo v Wayner Assocs., 192 AD2d 889, 891). Thus, the Statute of Frauds does not preclude defendants' counterclaims.

Additionally, issues of fact exist concerning whether plaintiff terminated its dealings with defendants for good cause or with reasonable notice. David Manny, plaintiff's vice-president and secretary, testified that a series of bills were paid between December 11, 1989 and April 1, 1990. However, in its claim that it terminated the contract for good cause, plaintiff refers only to defendants' failure to pay plaintiff's December 11, 1989 invoice for $7,490, although termination of the claimed distributorship contract did not occur until April 1, 1990. This raises a question of fact as to whether defendants' failure to pay the December 11, 1989 invoice was the cause of plaintiff's termination of the contract.

The evidence reveals that there are also factual questions to be determined regarding whether plaintiff's alleged notice terminating the contract was reasonable. Plaintiff's assertions that a 30-day notice is "customarily given in the paper industry to at will paper merchants" was conclusory in nature and insufficient to meet plaintiff's burden of proof for summary

judgment (*see, Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853; *Transamerica Commercial Fin. Corp. v Matthews of Scotia*, 178 AD2d 691, 694). Thus, Supreme Court's denial of summary judgment as to defendants' counterclaims was not improper.

Further, summary judgment may not be granted as to plaintiff's claims to recover the amount of the unpaid invoices because issues of fact are present as to defendants' counterclaims, i.e., whether the invoices are part of an exclusive distributorship or are themselves separate agreements (*see, Malverne Distribs. v Profile Records*, 135 AD2d 478, 479; *Sharp Elecs. Corp. v Arkin-Medo, Inc.*, 86 AD2d 817, *affd* 58 NY2d 986).

We also reject plaintiff's contention that, because defendants' assertions based on the alleged distributorship agreement lack merit, the discovery question is immaterial and moot. Questions of fact have been shown to exist as to defendants' counterclaims and, although Supreme Court correctly denied plaintiff's motion for a protective order, plaintiff was entitled to a confidentiality order as plaintiff met its burden of showing that the material requested constituted a trade secret (*see, Jackson v Dow Chem. Co.*, 214 AD2d 827, 827-828; *Curtis v Complete Foam Insulation Corp.*, 116 AD2d 907, 908). Pursuant to CPLR 3103 (a), "[t]he court may at any time on its own initiative, or on motion of any party * * * make a protective order denying, limiting, conditioning or regulating the use of any disclosure device", including confidentiality orders (*see, Serdaroglu v Serdaroglu*, 209 AD2d 600, 603). Discoverability of such documents involves a two-fold analysis: the moving party must show that the discovery demand would require it to reveal a trade secret, which then shifts the burden of the responding party to show that the information was indispensable to proving its cause (*see, Jackson v Dow Chem. Co., supra*, at 827-828; *Curtis v Complete Foam Insulation Corp., supra*, at 908).

The affidavit of Manny[2] was sufficient to meet plaintiff's burden of showing that disclosure of the material demanded in request No. 2 (i) would reveal trade secrets (*see, Jackson v Dow*

---

2. Manny stated in his affidavit that:

"the paper industry is intensely competitive, with paper manufacturers vying for market share. Precisely who a manufacturer sells to and what products are being sold, as well as the pricing thereof, is information which has great competitive significance. A sales history potentially provides a road map to competitors to make inroads on a given company's market position* * *

"Disclosure of such information is of particular concern to [plaintiff] because of its relatively narrow range of products and the risk of larger

*Chem. Co., supra,* at 828). Further, based on questions of fact concerning defendants' counterclaims as to the alleged exclusive distributorship agreement between the parties, defendants met their burden of establishing that the information sought was indispensable to their counterclaims (*see, supra*). However, Supreme Court indicated that it did not consider whether the discovery demand would reveal a trade secret and, consequently, improperly omitted the first step of the required analysis (*see, Bristol, Litynski, Wojcik v Town of Queensbury,* 166 AD2d 772, 773). Supreme Court erred in this respect and, upon analysis of this issue, a confidentiality order under CPLR 3103 (a) to protect plaintiff's interest in the discovery material in dispute is warranted.

Finally, we note that defendants did not appeal from Supreme Court's order of January 28, 1994 and for that reason the conflict of law question concerning whether the law of Ontario or New York should apply (argued in defendants' brief) is not properly before this Court for review.

Yesawich Jr. and Spain, JJ., concur.

Mercure, J. (dissenting). We respectfully dissent.

Defendant (the related corporate defendants shall be treated as a single entity for the sake of simplicity) is a paper merchant operating in the Province of Ontario, Canada. For some years, defendant purchased plaintiff's paper products on an open account. In April 1990 (at a time when defendant's account balance exceeded $50,000) plaintiff made a business decision to discontinue its relationship with defendant. At that time, defendant was advised that it could purchase plaintiff's paper products only during the current month and not thereafter. During the month of April 1990, defendant placed a single order with plaintiff, totaling $20,269.40. Although defendant retained the invoice for the April 1990 purchase and made no written protest concerning the quality of the goods shipped or plaintiff's decision to cease its business relationship with defendant until December 23, 1992, no payment was ever made. In June 1993, plaintiff commenced this action to recover the $70,984.84 balance due on defendant's account.

In its amended answer, defendant asserted four counterclaims predicated upon the essential theory that, in terminating its distributorship, plaintiff breached the parties' oral agreement granting defendant an exclusive right to sell plaintiff's products within Ontario for an unlimited period of

---

competitors with broader lines pressuring paper merchants or tying product sales".

time, to be terminated only upon good cause and reasonable notice. Ultimately, plaintiff made the current motion for (1) a protective order with regard to defendant's discovery demand for all records evidencing plaintiff's sales of paper products to distributors servicing Ontario from 1986 through 1993, including the identity of the distributors and the total annual sales to each of them, (2) summary judgment dismissing defendant's counterclaims, and (3) summary judgment for the relief demanded in the complaint.

Plaintiff supported its motion with an affidavit of David Manny, its vice-president and secretary, who stated unequivocally that plaintiff had no oral or written "distributorship" agreement with defendant. Rather, defendant was an "at will paper merchant of [plaintiff], ordering, receiving and selling [plaintiff's] paper products only for so long as the parties were mutually satisfied with their business relationship * * * a standard business arrangement similar to [plaintiff's] arrangements with numerous other merchants who purchase [its] products". Manny also stated that, in his experience, a 30-day notice period is standard in the paper industry for the termination of sales to merchants.

Plaintiff also submitted defendant's bill of particulars, demonstrating defendant's complete inability to support its claim that there existed an oral distributorship agreement between the parties. The writings that were referenced in the bill of particulars evidenced nothing more than defendant's status as an at-will merchant. Perhaps most damning was the acknowledgment that "[d]ue to the passage of time and the lack of writings evidencing the discussions between the parties and/or the terms of the distributorship agreement between [defendant] and [plaintiff], [defendant is] unable to specify with exactness the time, place and manner of the discussions resulting in the distributorship agreement". In fact, in its bill of particulars and additional submissions on the motion, defendant was able to demonstrate nothing more than plaintiff's willingness to provide it with paper products prior to May 1, 1990 and defendant's commercial interest in a continuation of that relationship. Nonetheless, other than limiting defendant's discovery demand to the period from 1986 through 1990, Supreme Court denied plaintiff's motions in all respects.

In our view, the present record clearly demonstrates that defendant's theory of an oral distributorship agreement and its alternative claim of entitlement to extended notice prior to a conclusion of the parties' business relationship are nothing more than a legal contrivance designed to divert attention

from plaintiff's meritorious causes of action for an account stated and sounding in contract. Defendant having failed to raise any genuine factual issues in opposition to plaintiff's summary judgment motions or excuse for its failure to do so, Supreme Court should have granted summary judgment dismissing defendant's counterclaims and granting plaintiff the relief demanded in its complaint.

Crew III, J., concurs. Ordered that the order is modified, on the law, without costs, by adding thereto a provision directing that the information demanded in defendants' document request No. 2 (i) be deemed confidential, and, as so modified, affirmed.