Mediant Communications Inc. v Spectrum Pharms., Inc. (2025 NY Slip Op 03161)

Mediant Communications Inc. v Spectrum Pharms., Inc.

2025 NY Slip Op 03161

Decided on May 27, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 27, 2025

Before: Manzanet-Daniels, J.P., Moulton, Gesmer, Pitt-Burke, Michael, JJ. 

Index No. 650138/23|Appeal No. 4044|Case No. 2024-01815|

[*1]Mediant Communications Inc., Plaintiff-Respondent,
v
Spectrum Pharmaceuticals, Inc., Defendant-Appellant.

Baker Botts L.L.P., New York (Eric Dupont of counsel), for appellant.
Robert H. Brown P.C., Larchmont (Robert H. Brown of counsel), for respondent.

Order, Supreme Court, New York County (Andrew Borrok, J.), entered February 2, 2024, which granted plaintiff's motion for summary judgment, unanimously reversed, without costs.
Plaintiff provided proxy distribution and vote tabulation services to defendant, a publicly traded pharmaceutical company. From 2013 through 2020, plaintiff sent, and defendant paid, annual invoices for plaintiff's proxy services, which ranged from a few hundred to a few thousand dollars and never exceeded $10,000.
In or about 2020, brokers such as Robinhood Markets, Inc. began to gift shares of publicly traded companies like defendant to the public (hereinafter "gifted shares"). As a result, the number of shareholders who required proxy materials suddenly increased exponentially in 2021. Plaintiff asserts that these gifted shares significantly increased the cost of its proxy services in 2021 and 2022. Consequently, plaintiff sent defendant invoices for $821,158.00 and $85,245.67 in May 2021 and May 2022, respectively. The 2021 increase in fees was approximately more than 85 times higher than any invoice plaintiff had ever submitted to defendant for its services. Defendant has not paid these invoices.
Plaintiff commenced this action in January 2023 against defendant asserting causes of action for breach of an implied-in-fact agreement, accounts stated, and unjust enrichment, concerning defendant's nonpayment of the 2021 and 2022 invoices for proxy services, and for nonpayment of a June 2021 invoice for $3,606.51 for vote tabulation services. Shortly after defendant filed its answer in October 2023, plaintiff moved prediscovery for summary judgment on its complaint.
The court improvidently granted summary judgment to plaintiff. An implied-in-fact contract requires a meeting of the minds (see I.G. Second Generation Partners, L.P. v Duane Reade, 17 AD3d 206, 208 [1st Dept 2005]). Moreover, "the question of contractual intent, and whether the parties meant to be bound, is largely one to be resolved by the trier of fact" (Lehrer McGovern Bovis, Inc. v New York Yankees, 207 AD2d 256, 259 [1st Dept 1994]).
Plaintiff correctly notes that an implied-in-fact agreement can be established based on parties' course of conduct (see Maas v Cornell Univ., 94 NY2d 87, 93 [1999]). Defendant contends, however, that in 2021, plaintiff "actively hid" information before billing defendant, contrary to its prior course of conduct. For example, in April 2020, plaintiff's employee, Joseph Simonowich, emailed defendant with an estimate of $9,501 for its 2020 proxy services, and later submitted an invoice for $9,519.65. Yet in 2021, plaintiff failed to provide an estimate or warn defendant of the nearly one million "E-Consent Only Holders," consisting primarily of gifted-shares recipients, to whom it intended to mail notice. Instead, plaintiff only gave defendant a vague warning about an impending "significant increase" before submitting its bill of more than $800,000. Given the disputed facts [*2]surrounding the parties' dealings, the court improperly held as a matter of law that the parties had an implied agreement.
Similarly, there are disputed facts as to whether defendant timely objected to the unpaid invoices, warranting denial of summary judgment as to plaintiff's account stated claims (see Cushman & Wakefield, Inc. v Kadmon Corp., LLC, 175 AD3d 1141, 1142 [1st Dept 2019]). Plaintiff argues that it met its prima facie burden by submitting the unpaid invoices, which "upon information and belief" defendant retained without objection. Defendant counters with evidence showing that approximately one month after receiving the May 2021 invoice, (i) representatives from defendant and its agent, Georgeson, exchanged emails expressing disbelief about the amount of the invoice, and (ii) defendant's former employee, Kasey Hume, spoke with plaintiff's billing manager about the invoice and received a 15% discount offer immediately thereafter. Under the circumstances, there is a question of fact as to whether defendant timely objected to the May 2021 invoice (see Prudential Bldg. Maintenance Corp. v Siedman Assoc., 86 AD2d 519, 519 [1st Dept 1982] ["Oral objections to an account stated are sufficient to defeat a motion for summary judgment"]). Moreover, as discovery, including depositions of key witnesses such as Hume, has not yet occurred, it was premature for the court to grant summary judgment on plaintiff's account stated claims (see 241 Fifth Ave. Hotel, LLC v GSY Corp., 110 AD3d 470, 472 [1st Dept 2013]).
Finally, the court erred in granting summary judgment on plaintiff's unjust enrichment claim. Plaintiff asserts that defendant was unjustly enriched because it received the benefit of plaintiff's services without payment. However, the proposed discount of 15% as well as evidence in the record that plaintiff may have offered discounts to others for its proxy services around that time raise questions of fact as to the fair value of plaintiff's services in 2021 and 2022.
Accordingly, issues of fact exist warranting denial of plaintiff's summary judgment motion.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 27, 2025