Elliot MILLER, Plaintiff,

v.

Jack D. TAWIL, Charles B. Cohen, and Steven R. Jacobson, individually and doing business as Suisse American Products Group and Suisse American Products Group, Inc., Defendants.

No. 00 CIV. 1175(LMM).

United States District Court, S.D. New York.

April 13, 2001.

Lewis P. Trippett, Higgins & Trippett, L.L.P., New York City, for Plaintiff.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

■ This action arises out of an employment contract dispute and related conduct. Elliot Miller ("Plaintiff") filed suit against Jack D. Tawil ("Tawil") Charles B. Cohen ("Cohen") and Steven R. Jacobson ("Jacobson"), individually and doing business as Suisse American Products Group ("SAPG") and Suisse American Products Group, Inc. ("SAPGI"), (collectively "Defendants") alleging (1) breach of contract; (2) the right to relief under *quantum meruit*;[1] and (3) fraud. Defendants move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Plaintiff's claim for breach of contract and SAPGI moves to dismiss Plaintiff's fraud claim. For the following reasons, both motions are granted.

## Factual Background

Plaintiff alleges that in May and June of 1999 he met with Tawil, Cohen and Jacobson and entered into an employment agreement with Defendants.[2] (Compl. ¶¶ 10–15.) As a result of this agreement Plaintiff claims he is entitled to a "minimum one year contract with a base salary of $100,000 plus expense reimbursement, life, health, and disability insurance coverage, bonuses, pension contributions, and stock options in SAPGI once it became incorporated." (*Id.* ¶ 14.) According to Plaintiff, the alleged employment agreement is confirmed in a letter written by Cohen, dated June 29, 1999 (the "June 29 Letter") and reconfirmed in a subsequent letter written by Tawil, dated September 2, 1999 (the "September 2 Letter") (collectively, "Letters").[3]

The June 29 Letter, written on SAPG letterhead states:

> This letter is to confirm that Elliott Miller has been hired by Suisse American Products Group [SAPG] as President of our Land Rover watch brand, at an annual salary of $100,000, commencing no later than September 1, 1999.
>
> An employment contract outlining the total compensation package (salary, benefits, etc.) will be prepared and submitted for agreement within a reasonable timeframe.

(Greenberg Aff. Ex. B.)

Plaintiff alleges that in the September 2 Letter, Tawil reconfirmed the employment agreement and reiterated that a written "annual contract" would be forthcoming.

---

1. The Court notes at the outset that a party cannot collect both contract damages and relief under *quantum meruit*. *See Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 262–63 (2d Cir.1999).

2. Plaintiff never specifically identifies to whom he is referring when he uses the term "Defendants" in the complaint. The Court presumes the term to refer to all parties sued by Plaintiff.

3. Copies of the June 29 Letter and the September 2 Letter were annexed to Defendants' notice of motion to dismiss. Although not attached to the complaint, the Letters were specifically referred in the complaint and are properly before the Court in evaluating Defendants' motions. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991).

(Compl. ¶ 17.) The September 2 Letter on SAPG USA[4] letterhead provides:

> [T]his letter serve[s] as an interim agreement that you will commence working for Suisse American Products Group USA ["SAPG USA"] as of October 1, 1999 as President of the Land Rover USA watch brand or a similar position in our group of brands for an initial base salary of $100,000 per annum payable on a monthly basis.
>
> This interim contract will serve as a monthly contract until SAPG USA has employment and compensation agreements which will include all the usual terms and conditions including bonuses, benefits, profit share and stock options, at which time an annual contract will be put in place.

(Greenberg Aff. Ex. C.)

Plaintiff alleges that he began to perform valuable services for Defendants on or about June 26, 1999. (Compl. ¶ 34.) He attempted to market the watches that Defendants had represented it would manufacture and have available for sale. (*Id.* ¶ 18.) Plaintiff alleges that he "made sales calls, attended jewelry trade shows, produced sales materials and incurred expenses on Defendants' behalf." (*Id.*) Plaintiff further alleges that Defendants never manufactured a single "Land Rover" watch. (*Id.* ¶ 19.)

Plaintiff alleges that after Defendants failed to produce the "Land Rover" watches, Defendants requested Plaintiff assist in the marketing of watches under the brand name "Faconnable" and represented that they had an agreement to sell Faconnable watches to select Nordstrom's retail stores and prospective retail jewelers. (*Id.* ¶ 21.) Plaintiff states that pursuant to his employment agreement he made sales calls to Nordstrom's and other stores. (*Id.* ¶ 22.) Plaintiff further alleges that Defendants did not provide any Faconnable watches until November 15, 1999, and then only in a limited amount beyond the number of watches agreed upon in the initial order with Nordstrom's. (*Id.*) Plaintiff alleges that although he received a single payment of $10,000 on or about November 18, 1999 (*Id.* ¶ 25), Defendants failed to compensate him for expenses incurred in connection with these sales pursuant to the employment agreement. (*Id.* ¶ 27.)

## Discussion

### I. Standard of Review

Faced with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir.2000), and accept the allegations of the complaint as true. *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir.1996). Dismissal of the complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### II. Breach of Contract

■ Defendants argue that Plaintiff's claim for breach of contract should be dismissed because (1) the alleged written annual employment agreement[5]—the Letters—is an unenforceable agreement to agree; and (2) the alleged oral employment agreement between Plaintiff and De-

---

4. Unlike the first letter, the September 2 Letter is written on SAPG USA letterhead. The complaint does not distinguish between SAPG and SAPG USA.

5. Plaintiff does not allege nor does the Court consider whether the June 29 Letter and the September 2 Letter constitute an employment contract for a lesser term.

fendants is unenforceable under the New York Statute of Frauds.

Plaintiff contends that "written documents that fall short of a formal contract are nevertheless binding as a 'preliminary agreement.'" (Pl. Mem. Opp'n at 5.) Further, Plaintiff argues that if the Letters are insufficient to constitute a written employment contract, they may be submitted as written evidence of an oral contract that satisfies the requirements of the Statute of Frauds.

## A. The Written Documents as Evidence of a Preliminary Agreement

Plaintiff contends that the Letters represent the manifestation of assent to a binding preliminary agreement. (Pl. Mem. Opp'n at 6.) The Second Circuit has established a framework for analyzing whether a written instrument constitutes a binding preliminary agreement or an unenforceable agreement to agree. *See Adjustrite Sys. v. Gab Bus. Servs.*, 145 F.3d 543, 547 (2d Cir.1998); *Teachers Ins. & Annuity Ass'n v. Tribune Co.*, 670 F.Supp. 491, 497–98 (S.D.N.Y.1987).

■ "Ordinarily, where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract." *Adjustrite*, 145 F.3d at 547 (citing *Shann v. Dunk*, 84 F.3d 73, 77 (2d Cir.1996)). However, under some circumstances, preliminary agreements do generate contractual obligations. These binding preliminary agreements generally fall into one of two categories.[6] *See id.* at 547.

■ The first category consists of fully binding preliminary agreements, where the parties have agreed on all points that require negotiation including whether to be bound, but agree to memorialize their agreement in a more formal document. *See id.* at 547. Such an agreement is fully binding; it is "preliminary only in form— only in the sense that the parties desire a more elaborate formalization of the agreement." *Tribune*, 670 F.Supp. at 498.

Confronted with the issue of determining whether a preliminary agreement is binding, the Court is mindful of two competing interests:

> First, courts must be wary of "trapping parties in surprise contractual obligations that they never intended" to undertake. Second, "courts [must] enforce and preserve agreements that were intended [to be] binding, despite a need for further documentation or further negotiation," for it is "the aim of contract law to gratify not defeat, expectations."

*Adjustrite*, 145 F.3d at 548 (quoting *Tribune*, 670 F.Supp. at 497–98) (other citations omitted).

■ The Second Circuit has interpreted New York law as establishing a four-part test for determining whether the parties intended their written statements to constitute a binding contract. *See Adjustrite*, 145 F.3d at 549; *Tribune*, 670 F.Supp. at 497–98. The factors considered are: (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. *See Tribune*, 670 F.Supp. at 499–503.

---

**6.** Plaintiff discusses the differences between the two types of preliminary agreements (Pl. Mem. Opp'n at 6 n.5), and contends that the case at bar is of the first type. Therefore, the Court limits its discussion to the first type of preliminary agreement.

### The Language of the Agreement

■ The first factor, the language of the agreement, is "the most important." *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 72 (2d Cir.1989). Here, the language supports the conclusion that the Letters were not a fully binding preliminary agreement. Neither the June 29 Letter nor the September 2 Letter states that it was a binding agreement or contains any express manifestation that the parties were bound by their terms to an annual employment contract.

Although the June 29 Letter does provide, "Elliot Miller has been hired by Suisse American Products Group" (Greenberg Aff. Ex. B), later language in the same document indicates that SAPG did not intend to be bound.[7] The June 29 Letter expressly states that "[a]n employment contract outlining the total compensation package (salary, benefits, etc.) will be prepared and submitted for agreement." (*Id.*) The operative words here, "submitted for agreement" make clear that the reference to an employment contract is not the formal memorialization of an intent to be bound. On the contrary, this employment contract was expressly contingent on whether the parties came to agreement on the "the total compensation package." Although language such as, "has been hired" may express some commitment on the part of Defendants, it does not constitute an express intent to be bound to an annual employment contract.

Further, the language of the September 2 Letter demonstrates an express reservation on the part of Defendants not to be bound to an annual employment contract. The September 2 Letter states "this letter

serve[s] as an interim agreement," and later, the September 2 Letter is expressly limited to "serve as a monthly contract until SAPG USA has employment and compensation agreements ... at which time a annual contract will be put in place." (Greenberg Aff. Ex. C.) There is clearly no intent to be bound to an annual employment contract.

■ "There is a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." *Tribune,* 670 F.Supp. at 499. The presumption was overcome in *Tribune* because in that case a letter described itself as a "binding agreement." *Id.* at 494; *see also Teachers Ins. & Annuity Ass'n v. Butler,* 626 F.Supp. 1229, 1230 (S.D.N.Y.1986), *appeal dismissed,* 816 F.2d 670 (2d Cir.1987) (holding that a binding agreement was formed because the parties agreed that their agreement was binding). Here, the language of the Letters argues persuasively for letting the presumption against finding a binding obligation stand.

"[A] party that does not wish to be bound can very easily protect itself by refusing to accept language that indicates a 'firm commitment' or a 'binding agreement'" *Tribune,* 670 F.Supp. at 499. Conversely, a party that *wishes* to be bound can very easily protect itself by refusing to accept language that shows an intent *not* to be bound.

In *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 72 (2d Cir.1989), the Second Circuit concluded that where the

---

7. The fact that Plaintiff was hired is not evidence that an annual employment contract was formed. *See generally Missigman v. USI Northeast, Inc.,* 131 F.Supp.2d 495, 508 (S.D.N.Y.2001) (finding that although plaintiff

was hired and worked for two years with salary paid by defendant, no intent to be bound existed and therefore no employment contract was in effect).

language of the writings shows an intention not to be bound, no further analysis of the *Tribune* test is necessary. *See Arcadian*, 884 F.2d at 72 (finding that an intention not to be bound was clearly manifested in two references in the memorandum to the possibility that negotiations might fail and a reference to a binding sales agreement to be completed at a future date). Therefore, for the reasons stated above, Plaintiff's argument that the letters constitute a binding preliminary agreement is without merit.[8]

### B. The Oral Employment Agreement

### 1. Oral Agreements Generally

■ Plaintiff alleges that in May or June of 1999 he entered into an oral employment agreement with the Defendants (Compl.¶¶ 10–15) pursuant to which he was to commence employment on September 1, 1999 (*Id.* ¶ 16) for a minimum term of one year (*Id.* ¶ 14.) Regarding oral agreements, the New York Statute of Frauds provides in relevant part:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged

therewith, or by his lawful agent, if such agreement, promise or undertaking:

> 1. By its terms is not to be performed within one year from the making thereof . . . .

N.Y. Gen. Oblig. Law § 5–701(a)(1) (McKinney 1989). In New York, oral agreements violate the Statute of Frauds when "by their very terms [they] have absolutely no possibility in fact and law of full performance within one year." *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 454, 483 N.Y.S.2d 164, 472 N.E.2d 992 (1984). "The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year." *Id.* at 454, 483 N.Y.S.2d 164, 472 N.E.2d 992 (quoting *Warner v. Texas & Pac. Ry. Co.*, 164 U.S. 418, 434, 17 S.Ct. 147, 41 L.Ed. 495 (1896)).

Plaintiff alleges that he entered an oral annual employment agreement with Defendants in May or June of 1999 to commence on September 1, 1999. Assuming Plaintiff's allegation to be true, the oral agreement is unenforceable because it

---

**8.** Even if the language of the Letters did not establish that no intent to be bound existed, the three remaining factors, partial performance, open terms and type of contract all support Defendants. First, although it is undisputed that Plaintiff has performed valuable services and Defendants have accepted such performance, there is no evidence that such performance was consistent with an annual employment contract. *See Nap, Inc. v. FRA-JAC, S.A.*, 1996 WL 537914, 104 F.3d 350 (2d Cir.1996) (holding that extensive performance by both parties strongly indicated a binding commitment when performance went beyond adherence to the express terms and "bespoke an understanding by the parties that they were bound," *id.* 1996 WL 537914 at *2, 104 F.3d 350, and where all material terms of the contract were agreed upon "with great particularity and clearly did not contemplate fur-

ther negotiations." *Id.* 1996 WL 537914 at *1, 104 F.3d 350). Second, the Letters do not adequately identify the parties to the contract, the scope of compensation, or the duration of the contract. *See Gilinsky v. Sarbro Realty Corp.*, 138 A.D.2d 823, 525 N.Y.S.2d 742, 743 (1988) (holding that "the essential elements of an employment contract are the parties to the contract, the position to be assumed, the salary or compensation to be received and the duration"). Finally, an annual executive employment agreement complete with a bonus package that could vastly exceed the $100,000 base per annum salary, is of the type ordinarily committed to a formal written contract. *See Adjustrite*, 145 F.3d at 551 (finding that the court must examine the size, scope and length of the transaction to determine whether it is of the type ordinarily committed to writing).

would not be fully performed until September 1, 2000—more than one year after the discussion took place. This is precisely the type of oral employment agreement that New York courts have consistently held to be unenforceable because it violates the Statute of Frauds. *See Cron v. Hargro Fabrics*, 91 N.Y.2d 362, 366, 670 N.Y.S.2d 973, 694 N.E.2d 56 (1998) (stating that an oral agreement is unenforceable when by its terms it cannot be completed within one year); *see also Rackson v. Sosin*, 2001 WL 266981 at *1, 2001 U.S.App. LEXIS 4155 at *4 (2d Cir. Mar. 16, 2001) (finding conversely that if the transaction can be completed within one year then the oral agreement is enforceable because it falls outside the Statute of Frauds).

### 2. The Letters as Written Evidence of an Oral Agreement

▉▉▉▉ Although the alleged oral agreement is void under the Statute of Frauds, Plaintiff argues that the Letters are written evidence that removes the oral agreement from the Statute.[9] In order to satisfy the Statute of Frauds, a writing[10] must contain all the essential terms of the parties' agreement. *See Bodner v. FDIC*, 1998 WL 639284 *3–4, 162 F.3d 1147 (2d Cir.1998).

▉▉▉▉ "A term is 'essential,'[11] and must thus appear in the 'memorandum,' if it seriously affects the rights and obligations of the parties." *Ginsberg Mach. Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir.1965). The Court is satisfied that the Letters leave open numerous material terms that would substantially effect the rights and obligations of the parties because the value of bonuses, benefits, profit sharing and stock options in executive contract agreements can readily exceed the value of the base salary.[12]

Plaintiff's reliance on *V'Soske v. Barwick*, 404 F.2d 495 (2d Cir.1968) (upholding contract based on written and oral statements regardless of unresolved terms), *cert. denied*, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969), is without merit. In *V'Soske*, the Second Circuit stated that "[t]he law is clear that although the parties may intend to enter a contract, if essential terms are omitted from the agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result." *Id.* at 500 (citations omitted). In *V'Soske*, the only term of the contract left open was the value of the audited net worth of the company, which the court determined had a "well defined meaning and provides a method of valuation by which the exact amount contemplated can be determined." *Id.* at 500. In contrast, the open terms in the present

---

**9.** "The Statute of Frauds does not require the 'memorandum ... to be in one document. It may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject matter and occasion.'" *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54, 110 N.E.2d 551 (1953) (citing *Marks v. Cowdin*, 226 N.Y. 138, 145, 123 N.E. 139 (1919)).

**10.** The written evidence may not be supplemented by parole evidence. *See Ginsberg Mach. Co. v. J. & H. Label Processing Corp.*, 341 F.2d 825, 828 (2d Cir.1965) ("In order to satisfy the statute [of frauds] the 'memoran-

dum' must, on its face and without the addition of parol evidence, contain the essential terms of the agreement.").

**11.** The Court notes that New York courts use the terms material and essential in this context interchangeably.

**12.** In determining whether omitted terms are essential to a contract, New York courts adopt a flexible approach and look at the "broad framework" of a contract. *See Shann v. Dunk*, 84 F.3d 73, 77 (2d Cir.1996).

case do not lend themselves to "well defined ... method[s] of valuation." *Id.*

Plaintiff's argument that Defendants' use of the phrase "usual terms and conditions" to describe these open terms indicates that "there was a known standard referred to" (Pl. Mem. at 11) is without merit. The fact that bonuses, benefits, profit sharing and stock options may be "usual terms and conditions" of an executive employment contract has no bearing on whether their present and particular value was ever contemplated or objectively discernable. The Court concludes that in the present case the value of these "standard" benefits are not discernable and therefore, their presence does not defeat Defendants' motion.

Plaintiff also relies on *Viacom Int'l, Inc. v. Tandem Prods., Inc.,* 368 F.Supp. 1264 (S.D.N.Y.1974), *aff'd,* 526 F.2d 593 (2d Cir. 1975), for the proposition that performance "is strong circumstantial proof that the minds of the parties had met on the essential elements." *Id.* at 1270. However *Viacom,* involved a contract dispute over a television program produced and broadcast for a full year without a written contract. The court found that in that particular industry it was common for agreements to be reduced to writing after performance had occurred in part or in whole. Plaintiff's reliance on *Viacom* is without merit because the court's ruling in that case was premised on circumstances specific to that particular case and industry.

Accordingly, Plaintiff's first claim for relief for breach of contract is dismissed with leave to amend, if that can be done consistently with the facts, because (1) to the extent that the contract is alleged to be in writing, it is an unenforceable agreement to agree and not a binding preliminary agreement; and (2) to the extent that the contract is alleged to be an oral agreement, it is unenforceable because it violates the New York Statute of Frauds.

## III. Plaintiff's Fraud Claim Against SAPGI

In order to satisfy the strict pleading requirement of Fed.R.Civ.P. 9(b), fraud must be plead with particularity. "The complaint must: 1) specify the statements that the plaintiff contends were fraudulent, 2) identify the speaker, 3) state where and when the statements were made, and 4) explain why the statements were fraudulent." (citations omitted). *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993) (citing *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)).

In the complaint, Plaintiff does not allege any nexus between the defendants Tawil, Cohen, Jacobson or SAPG and SAPGI, nor does the complaint contain a single allegation which may form the basis of a fraud claim against SAPGI. (Compl.¶¶ 39–47.) Although Plaintiff makes several arguments regarding successor liability (Pl. Mem. Opp'n at 17–18), the complaint does not allege that SAPGI is a successor entity of SAPG, nor does it allege any connection between Tawil, Cohen, Jacobson or SAPG and SAPGI that can serve as the basis for such an argument. Accordingly, Plaintiff's fraud claim against SAPGI is dismissed with leave to amend to allege facts, if true, that specifically allege fraud as to SAPGI.

## Conclusion

For the foregoing reasons Defendants' motions to dismiss are granted and Plaintiff's contract and fraud claims are dismissed. Plaintiff is granted sixty days leave to amend the complaint consistent with the foregoing.

SO ORDERED.