**GINSBERG MACHINE CO., Inc.,**
**Plaintiff-Appellant,**

v.

**J. & H. LABEL PROCESSING CORP.,**
**Defendant-Appellee.**

**No. 171, Docket 29115.**

United States Court of Appeals
Second Circuit.

Argued Nov. 17, 1964.

Decided Feb. 15, 1965.

826

Jacob Greenwald, New York City (Louis B. Brodsky, New York City, on the brief; Allan Seserman, New York City, of counsel), for plaintiff-appellant.

Melvin D. Kraft, New York City (Baer, Marks, Friedman & Berliner, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and MEDINA and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

Plaintiff commenced an action for breach of contract in a New York state court, and it was removed, pursuant to 28 U.S.C. 1441(b), to the District Court for the Southern District of New York. Trial commenced before Judge Levet and a jury, and at the conclusion of plaintiff's case, defendant moved for a directed verdict and for dismissal of the complaint. The motion was granted and we affirm.

Jack Ginsberg, plaintiff's president, testified that he and Cliff Jordan, defendant's president, created an oral contract at a business convention in Atlantic City in 1953. Jordan is claimed to have said:

"Jack, you cannot sell labels; labels is our business. Machinery is your business, and I want to get out of the machine business. You can build a machine and as long as you build a machine you can have the exclusive agency, and as long as I am in the Electric Sealing label business I'll see to it that you have an exclusive on the selling of the label machines."

Ginsberg claimed he replied, "I'll be very happy to have it on that basis," and the parties shook hands. Several months

later Ginsberg sent Jordan the following letter:

"Ginsberg Machine Co., Inc.
224 Fifth Avenue,
New York 1, N. Y.

September 2, 1953

Mr. Cliff Jordan
J. & H. Label Processing Corp.
230 W. Passaic Street
Maywood, New Jersey

Dear Cliff:

So that we have a clear understanding for both of our companies and our personnel, we are to manufacture and sell the machines exclusively.

Our organization here will try to be helpful in selling and passing on to you customers for the label processing in connection with the electronic machine, and we are not to participate in any way at all in the label processing sales, and likewise it is understood that you will not participate in the sale of the electronic machines.

The Ginsberg Machine Company is to get from you the blueprints, jigs, dies, etc., for the making of the electronic label machine for sale purposes free of charge.

I know and hope that you will have a nice relationship at all times, and that it will lead to doing a great many things together.

Sincerely,
/s/Jack Ginsberg
Jack Ginsberg
JG:ep

Agreed & Accepted by:
J. & H. Label Processing Corp.
/s/ Clifford Jordan
President"

We find it impossible to extract an enforceable contract from these informal exchanges.

■ First, the alleged oral understanding of April 1953 is "void, unless it or some note or memorandum" of it is "in writing, and subscribed by the party to be charged," New York Personal Property Law, McKinney's Consol.Laws, c. 41, § 31(1).[1] Plaintiff insists that the exclusive in the sale and manufacture of the machine was to last as long as defendant stayed in the electroseal processing business and plaintiff continued manufacturing and marketing the machine. By the very terms plaintiff attributes to the agreement, it is not to be performed within one year from the making thereof and thus it falls within the New York statute of frauds, Zupan v. Blumberg, 2 N.Y.2d 547, 161 N.Y.S.2d 428, 141 N. E.2d 819 (1957); Nurnberg v. Dwork, 12 App.Div.2d 612, 208 N.Y.S.2d 799 (1960), aff'd by mem. opinion, 12 N.Y.2d 776, 234 N.Y.S.2d 721, 186 N.E.2d 568

1. The parties, and the court below, have assumed that the New York statute of frauds governs. This appears to be a reasonable assumption, see generally, Auten v. Auten, 308 N.Y. 155, 12 N.E.2d 99, 50 A.L.R.2d 246 (1954). On the one hand, the parties shook hands on the purported agreement in Atlantic City, New Jersey; defendant was located in Maywood, New Jersey; and plaintiff maintained a wholly owned subsidiary in Reading, Pennsylvania. But, on the other hand, plaintiff was located in New York; this purported agreement was formally concluded at Atlantic City only because the parties happened to be attending a business convention there; the meeting in Atlantic City was preceded by many months of negotiations that took place elsewhere; the trade that both parties sought to service was primarily localized in the garment center in Manhattan; and the forum is in New York. There can be no doubt the Pennsylvania statute of frauds is inapplicable, and we are prepared to assume, without necessarily deciding, that the New York rather than the New Jersey statute of frauds is applicable. The New Jersey statute, 25 N.J.S. 1–5(e), N.J.S.A., is the same as New York's (but see Shiddell v. Electro Rust-Proofing Corp., 34 N.J. Super. 278, 112 A.2d 290 (App.Div.1954) and this case could be adequately disposed on the second ground discussed below, p. 828, which is not derived from a statute of frauds and which rests on principles common to both New York and New Jersey law.

(1962); Perrin v. Pearlstein, 314 F.2d 863 (2 Cir. 1963).

■ The letter of September 2 is not a sufficient "note" or "memorandum" for purposes of the statute of frauds. In order to satisfy the statute the "memorandum" must, on its face and without the addition of parol evidence, contain the essential terms of the agreement, e. g., Drake v. Seaman, 27 Hun 63, affirmed 97 N.Y. 230 (1884), and the September 2 letter omits at least one essential term, the duration of the supposed exclusive. The concept of "essentiality" is relative. A term is "essential," and must thus appear in the "memorandum," if it seriously affects the rights and obligations of the parties and there is a significant evidentiary dispute as to its content. The duration of the exclusive, the term missing from this "memorandum," satisfies both these tests. Cf. Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 110 N.E.2d 551 (1953). It is the subject of a significant evidentiary controversy. Plaintiff claims that the exclusive was to last as long as the parties remained in their respective businesses, while defendant insists that whatever arrangement existed between them it was to be terminable at will; there were no witnesses to the supposed conversation in Atlantic City; and Jordan denied, in his deposition, which was read into evidence at the trial, that anything was said in the Atlantic City conversation concerning duration. Moreover, there could be no doubt that, because of the very nature of the purported agreement the parties' obligations and rights would be radically altered if one version of the facts rather than the other were accepted.

■ Secondly, this supposed agreement is at most merely the outline of a working arrangement, not a contract specifically establishing the rights and obligations of the parties. Vagueness, indefiniteness and incompleteness are the earmarks of what the parties shook hands on in Atlantic City, and the September 2 letter, described by Ginsberg as "tying up our intent," did not remedy the situation. Was plaintiff required to manufacture and sell a minimum number of machines? What did plaintiff oblige itself to do by saying it would "try to be helpful" in selling the machines and passing on customers? What was defendant obliged to do? Were all machines developed in the future by defendant to be covered by the arrangement? Was defendant precluded from collaborating with other machine manufacturers? The evidence offered by plaintiff only sought to establish the duration of the exclusive; there was no testimony tending to establish that the parties had ever resolved these other questions and there was even less evidence tending to show how they were resolved. Although we are not unmindful of the classic principle of Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214 (1917), we decline to fill this void by implication. Here the void is too great, the omissions are too noticeable and the risk of ensnaring a party in a set of contractual obligations that he never knowingly assumed is too serious.

Affirmed.